JOSEPH SCURA, Plaintiff *v.* NATIONAL CITY BANK OF NEW YORK, Defendant.

(Supreme Court, New York Special Term, April, 1919.)

Negotiable instruments — banking — how title determined to money paid for draft drawn upon a national bank by its foreign branch — parties — pleading — demurrer to defense sustained.

On the purchase of a draft drawn upon a national bank by its Buenos Aires branch, the title to the money paid therefor must be determined by the laws of the Argentine Republic, which presumably are in accord with the law merchant as recognized in the state of New York.

Where the purchaser of the draft delivered it to one who brought suit thereon as a holder for value, the bank is liable unless it alleges and proves that the title of the purchaser from it was defective or that there is some good defense as to him on the paper.

The mere fact that in criminal proceedings brought against said purchaser in Argentina, to which plaintiff was not a party, nor privy to any party, an order was issued enjoining the payment of the draft by defendant except to a holder for value, does not preclude the present action, even though the plaintiff is not a holder for value, and whether said order, which apparently was interlocutory, as distinguished from a judgment, could, even if binding on plaintiff, constitute a defense to the action or whether it would only effect a stay of proceedings so long as the order was outstanding, it is unnecessary to consider.

Where by an affirmative defense in which though alleging that the original purchaser of the draft was engaged in certain swindling operations in Buenos Aires; that he knowingly made false representations to those who would entrust their money to him, that as a result of his operations he would return such money to them later with three per cent interest a week, but did not, and so obtained large sums of money greatly exceeding the amount of the draft, with others, but no claim is made that he deceived or defrauded the bank, except by paying to it the moneys of which he had defrauded others, a demurrer to said defense will be sustained.

While, if properly pleaded, the fact that persons who either at common law or under the law of the Argentine Republic still have title to such money and have made claims thereto which they are enforcing by proceedings in an appropriate court against the defendant herein, and that under the law of the forum defendant has no title to the funds unless it pays drafts purchased therewith, might constitute a defense to an action brought either by the original purchaser of the draft or his assignee other than a holder for value, that question may not be determined upon this demurrer.

While ordinarily a judge in sustaining a demurrer ought not to express any opinion as to additional facts which must be alleged in order to make the pleading valid, there having been in the present case two demurrers and one motion to strike out said affirmative defense, the court, in order that the defendant may determine whether it can, or should attempt to, plead the additional facts which the court deems the only possible defense and to serve the best interests of the parties, gives its views.

Demurrer to affirmative defense.

Weil & Espen, for plaintiff.

Shearman & Sterling, for defendant.

Lehman, J.   The plaintiff sues as a holder for value of bills drawn upon the defendant by its Buenos Aires branch and delivered to one B. de la Muerte for value received.   The answer contains an affirmative defense which alleges in effect, that the money which B. de la Muerte paid to the defendant's Buenos Aires branch for these drafts was obtained by him from various persons by means of fraud; that in criminal proceedings brought against de la Muerte after he became a fugitive from justice, these persons made claim to the said money with which the drafts were bought and a court of competent jurisdiction issued an order enjoining the defendant from paying the drafts anywhere in the world, unless presented by *bona fide* holders for value.   The plaintiff has demurred to this

defense. A previous demurrer to a similar defense was sustained by me principally on the grounds that the answer contains no allegation that the court had jurisdiction of the parties or of the subject matter of the action and no facts showing that de la Muerte obtained the moneys by fraud or that the defendant became a trustee for the defrauded parties. In the present answer the defendant has attempted to meet these objections, but it seems to me unsuccessfully.

The answer alleges that after de la Muerte purchased the draft he " disappeared from Buenos Aires and became a fugitive from justice. Thereafter an action or proceeding was duly brought against the said de la Muerte in the Court of Criminal Proceedings of Buenos Aires, Argentine Republic, of which the said court had jurisdiction, under the said statutes and laws. The said court was then duly constituted and duly empowered to entertain proceedings for the prosecution of the crime of obtaining money or other property under false pretenses or by fraud committed in the City of Buenos Aires, Argentine Republic, and to make injunction orders relating to such money or other property. The said court also had jurisdiction of *the parties to the said action or proceeding and of the money which is the subject matter of the present action, which was then and is still in Buenos Aires and of the defendant herein, etc.''* It may be that these allegations are sufficient to show that the court making the injunction order was a court of competent jurisdiction and that the defendant was subject to its jurisdiction. It contains, however, no allegation that the court had jurisdiction of the plaintiff in the *present* action and the allegation that it had jurisdiction of the moneys " which are the subject of the present action " is a conclusion of law not borne out by the facts. The subject of the present action is a bill of

exchange drawn by a domestic corporation and payable in New York. Its validity may, to some extent, depend upon the question of whether de la Muerte had title to the moneys which he paid to the defendant in consideration of the making and delivery of the notes but these moneys are not the subject of the action here and no judgment in this action holding the defendant liable on its promise could directly affect the title to the moneys in Buenos Aires, though it might result in the defendant being held liable upon an obligation payable here and at the same time being held liable for the return to other parties of the moneys received as consideration for the making and delivery of the instrument in Buenos Aires. Naturally if de la Muerte had no title to the moneys which he could transfer, or if under the laws of the Argentine Republic the defendant was bound after notice of de la Muerte's fraud to hold the moneys received from de la Muerte as trustee for the persons defrauded by him and must pay over these moneys to such persons or to some court in their behalf, unless it was compelled to pay the drafts to a holder for value, then de la Muerte's title to such drafts was defective and they can be enforced by the plaintiff only if he is a holder for value. It must be remembered, however, that even if the plaintiff is not a holder for value, the defendant is liable upon its drafts unless it alleges and proves that de la Muerte's original title was defective or that there was some good defense as to him on the note and the mere fact that in a proceeding in Argentine, to which the plaintiff was not a party and apparently not privy to any party, an order was issued enjoining the defendant from *paying* these drafts except to a holder for value, cannot in itself prevent the plaintiff from suing in the courts of this State upon this draft, even if it is not a holder

for value. Even if he is only an assignee of de la Muerte, he is entitled to his day in court to meet any defense which defendant might urge to the drafts by reason of any fraud or wrong doing on the part of de la Muerte and he cannot be deprived of his day in court by reason of any proceedings in Argentine courts by other persons to establish their own rights to money paid as consideration for these drafts. In view of this conclusion it becomes unnecessary for me to consider whether in any event an injunction *order,* as distinguished from a judgment, which is apparently merely temporary or interlocutory could, even if binding on plaintiff, constitute a *defense* to the action or whether its effect would be limited to staying proceedings so long as the order was outstanding.

The serious question, therefore, which is raised by the demurrer, is whether the affirmative defense aside from the allegations as to the injunction, shows that the bank would have any defense to the note if sued by de la Muerte. There is no claim that de la Muerte deceived or defrauded the bank except by paying to it moneys of which he had defrauded others. That would, of course, constitute no fraud on the bank and no defense to the drafts unless de la Muerte could transfer no title to the moneys or only a title which would be defeated if after notice of the fraud or after the issuance of an injunction order by a court of competent jurisdiction, it paid the draft to de la Muerte or to an assignee other than a holder for value. I find no such allegations in the answer. It is true that the answer alleges that de la Muerte engaged in certain " swindling operations in the City of Buenos Aires   *   *   *   in which he represented to those who would entrust their money to him that, as a result of his operations, he would return such money to them later with interest or profit of three per cent

Supreme Court, April, 1919.        [Vol. 107.

per week thereon. In this way he obtained from
numerous persons, who were unfamiliar with business
affairs, large sums of money greatly exceeding the
amount of the drafts referred to in the complaint.
* * * The said representations made to such persons
by the said de la Muerte were false and were known
to him to be false when he made them; and he did
not pay to the persons who had entrusted their money
to him a return of three per cent per week nor any
return thereon, nor did he return to them the money
so entrusted to him and he thereby became a trustee
of the said funds for the benefit of the rightful owners
thereof." The allegation that the said de la Muerte
" became a trustee of the said funds " is not an allega-
tion of fact but is only a conclusion based on the pre-
ceding allegations and in my opinion, the preceding
allegations do not justify the conclusion. The repre-
sentations referred to are all promissory in their
nature and they cannot give rise to a claim that the
money was obtained by false pretenses and that de la
Muerte was a thief without title thereto. See *People*
v. *Miller*, 169 N. Y. 339, 351. It is true that in that
case the court held that though such representations
could not constitute larceny through false pretenses,
yet where a person obtains moneys by means of a
fraudulent device with intent on his part to convert it
to his own use, from a person who intended to part
merely with possession and not with title, he is guilty
of common law larceny. In the present case, however,
there is nothing except innuendo to show that de la
Muerte intended to convert the money to his own use
or that the persons who " entrusted " their money to
him did not intend to part with the title. In the case
of *People* v. *Miller, supra,* the court in effect held that
there was proof that the persons who entrusted their
money to Miller did so only for the purpose of allow-

ing him to use the money for speculation and that Miller did not use it for this purpose, but in this case there is no allegation of such facts. It follows that even aside from the question of whether the defendant is in a position to raise in behalf of unnamed persons the defense that de la Muerte did not own the money paid to it for the drafts, the demurrer to the defense must be sustained.

Ordinarily a judge in sustaining a demurrer to a pleading ought not to express any opinion as to the additional facts which must be alleged in order to make such pleading valid, for he cannot know what are the true facts and he does not give the demurring party the opportunity to argue that even if other facts were alleged, they would not constitute a sufficient plea. In the present case, however, there have been two demurrers and one motion to strike out this defense and I think it will serve the best interests of the litigants if I state my view of the defendant's rights and the law applicable to the case in order that the defendant may determine whether it can, or should attempt to, plead facts constituting what I deem the only possible defense to this action.

The purchase was made in Buenos Aires and the title to the moneys paid for the draft must be determined by the laws of the Argentine Republic. Presumably those laws are in accord with the law merchant as recognized in this jurisdiction but it may be that the law of Argentina is different from our law. While the injunction proceedings are not binding on this plaintiff, yet I must presume that if the allegations of the complaint are true and an injunction order has been issued upon the claim of the persons alleged to have been swindled, they must have made out a *prima facie* case that no title to the moneys can be passed to the bank by de la Muerte unless and until the bank has

Supreme Court, April, 1919.     [Vol. 107.

been compelled to pay the draft to holders for value. In other words, it seems at least possible that de la Muerte either obtained merely possession of, and not title to, the funds by a common law larceny because the moneys were entrusted to him for a specific purpose with which he did not intend to comply and not merely upon promissory representations; or that under the law of the Argentine Republic, no title passes to money which is obtained by promissory representations. It would further appear that the persons who either at common law or under the law of the Argentine Republic still have title to this money, have made claims to it which they are enforcing by proceedings in an appropriate court against the defendant, and that under the law of the Argentine Republic, the defendant has received no title to these funds unless it pays the drafts purchased therewith, to a holder for value. If such facts exist then they should be properly pleaded. If pleaded, I think they would constitute a defense to an action brought by de la Muerte or an assignee other than a holder for value. I recognize, however, that the correctness of this view cannot be tested on this demurrer and they are in no wise binding on either party hereto.

Demurrer sustained with costs and with leave to defendant to serve an amended answer within twenty days after entry of interlocutory judgment, upon payment of costs.

Ordered accordingly.